# STATE OF MICHIGAN

# COURT OF APPEALS

ANDREA BLACKBURN,

        Plaintiff,

and

KENDRA BLACKBURN

        Plaintiff-Appellant,

v

MICHAEL ALPHIOUS BAGLEY and
MICHELLE BAGLEY,

        Defendants-Appellees.

UNPUBLISHED
October 19, 2017

No. 333033
Wayne Circuit Court
LC No. 14-006625-NI

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

In this tort action for noneconomic damages under the no-fault act, MCL 500.3101 *et seq.*, the trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff contends that the trial court erred in concluding that there were no material factual disputes as to plaintiff's injuries and their effect on her general ability to lead a normal life. We agree and so reverse.[1]

---

[1] This Court reviews de novo a lower court's decision on a motion for summary disposition, *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Assoc*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

This case arises out of injuries sustained by plaintiff as the result of a motor vehicle accident with defendant Michael in the early morning hours of February 2, 2013. Plaintiff was riding in the front passenger seat of a GMC Jimmy, while her mother was driving. The women were leaving work and were on their way to pick up plaintiff's children from a babysitter. At some point during the commute, the car broke down and became disabled in the far left lane of traffic. The women engaged the emergency flashers and waited for the tow truck. While waiting for the tow truck, plaintiff's vehicle was stuck from behind by defendants' vehicle. Plaintiff testified that their vehicle was jolted forward and lifted up before it slid along the guardrail. She stated that during the collision, her head hit the roof of the vehicle and that she felt pain in her head. Plaintiff left the scene of the accident in a tow truck; however, 24 hours later, she went to the emergency hospital complaining of headache, neck pain, and lower back pain from the accident. They provided her with a cervical collar and directed her to follow up with her private physician.

Plaintiff and her mother filed a complaint against defendants alleging negligence. They contended that as a result of defendants' negligence, plaintiff suffered injuries to her lumbar and cervical spine, pain and mental anguish, wage loss, and other damages recoverable under Michigan's no-fault laws. Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7) contending that plaintiff did not have any apparent injury at the time of the accident, that she had undergone minimal amount of treatment compared to the alleged injuries, and that the injuries had a limited effect on her ability to lead a normal life. The court agreed, and granted defendants' motion for summary disposition.

Tort liability for injuries in auto accidents is defined in MCL 500.3135, which provides in pertinent part as follows:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered serious death, serious impairment of body function, or permanent serious disfigurement.

> (5) As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.

In *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010), the Michigan Supreme Court announced a three-prong test for determining whether a plaintiff had sustained a serious impairment of a body function under MCL 500.3135. To show such impairment, a plaintiff must establish: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *Id*.

At issue here is third prong of the *McCormick* test: the impairment "affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 200. We hold that genuine issues of material facts exist as to whether plaintiff's impairment affected her ability to lead a normal life. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. at 202.

The records established that before the accident, plaintiff was employed part-time as a custodial janitor at a high school, where her regular duties included sweeping, mopping, dusting, lifting heavy trash bags, and handling package deliveries. She worked 20 hours a week. However, plaintiff testified that after the accident, she was unable to return to work for over two years following the accident, and her medical records contained information confirming physician-issued disability notes from two different physicians. One of her physicians noted that plaintiff's job as a janitor was "too physically strenuous for her given her current limitations and the pain that she is undergoing." Plaintiff was also prescribed home-attendant care to assist with household and childcare duties, and she testified to other limitations in her activities. Defendant argues that the decision by plaintiff's physician to take her off work and to limit her household activities were not justified by the nature of her injuries, citing the findings of another physician and the trial court appears to have adopted that view.

The trial court erred by adopting the findings of one physician cited by defendant and rejecting the others rather than recognizing that it is not to make factual or credibility findings, but instead to determine if a question of fact exists. Only if no material factual dispute exists is the court to determine as a matter of law whether plaintiff has suffered a serious impairment. MCL 500.3135(2) makes clear that the court is not to resolve factual disputes and where such disputes exist, the serious impairment issue is one for the jury, not an issue of law for the court. The statute provides in relevant part:

> (a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. . . .

Evidence was presented that plaintiff sought treatment from and consulted with several doctors over a period of two years, and that their diagnoses and treatment recommendations varied.[2] The trial court adopted the view that the opinion of one doctor who found minimal injury was more credible than that of the other physicians who diagnosed her with more disabling conditions,

---

[2] After the accident plaintiff was seen twice by a neurosurgeon after which she was treated by two orthopedists. The former found no neurological injury or other surgical problem and released plaintiff to work. The latter doctors directed that she not return to work due to a mechanical (i.e. non-neurological) back injury as demonstrated by ongoing cervical muscle spasms, straightening of the normal cervical lordosis (as demonstrated on MRI) and lumbar disc protrusions. She was referred to physical therapy where she was found to have significantly reduced range of motion.

disabled her from work for approximately two years, and advised limitation on various household and ordinary activities. This was error.

The record demonstrates that there is a "factual dispute concerning the nature and extent" of plaintiff's injuries. Further, given the dispute as to why plaintiff was off work for two years, this dispute is clearly material to the question whether she has suffered a serious impairment of a body function. Although plaintiff was employed at the time of the hearing, her two-year disability alone is sufficient to create at least a question of fact as to serious impairment. MCL 500.3135(1) does not create an express temporal requirement as to how long an impairment must last in order to have an effect "on the person's ability to live his or her normal life." Moreover, the standard does not require that plaintiff's ability to lead a normal life should be destroyed, only that it was affected. *McCormick*, 487 Mich at 202. According to the Supreme Court,

> [T]he plain text of the statute . . . demonstrate[s] that the common understanding of "affect the person's ability to lead his or her normal life" is to have an influence on some of the person's capacity to live in her or her normal manner of living. By modifying "normal life" with "his or her," the Legislature indicated that this requires a subjective, person-and fact-specific inquiry that must be decided on a case-by-case basis. Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident. [*McCormick*, 487 Mich at 202.]

We conclude that there were material questions of fact precluding a grant of summary disposition on the question of serious impairment of body function. Accordingly, we reverse the trial court's grant of summary disposition and remand for further proceedings. Appellant as prevailing party may tax costs. MCR 7.219A. We do not retain jurisdiction.


/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly